May I please the court, counsel? My name is Krista Carlson, and I represent the union. We'll refer to them sometimes as IATSE and sometimes as Local 151. Their full name's quite long. Local 151 is a group of individuals who are qualified to work as riggers, stagehands, lighting technicians, etc., with various venues. When shows come to town like Garth Brooks, or there's an event like Ribfest, there's multiple venues that they work for throughout Lincoln, Nebraska. There's only two at issue here, SMG and Freeman Decorating. Freeman Decorating is handled differently than SMG. It has a different contract. There's a different relationship. They act more like the actual employer. They take out the deductions from the check. They pay directly. So there's a different relationship. SMG has three different venues for which IATSE works. There's the Pershing Center, there's the arena, and there's Pinewood Bowl. Now, my first assignment of error here is that when we got into court, I came in there prepared with a lot of evidence to show that we were non-exclusive service providers to all three of those venues. I had all kinds of evidence. Hey, my guys are going to work for them, but they're bringing in their own crews for each of these places, and the judge says, no, no, no, you can't talk about any of that. You can only talk about SMG Pershing. She said SMG Pershing is the employer. She defined that as the employer, and you'll see that in footnote 13 of her order. You'll see a lot of discussion about that. You'll see on pages... Well, you had a letter of understanding, right? Right, and did you see the language? And it has those words, on those occasions when the union can't meet the standards, they can supplement with its own personnel or somebody else. Boy, that sounds exclusive. Got to use you first. No, Your Honor, and absolutely not. Did you see the bold, underlined capital language that says non-exclusive service provider? Yeah, but after that, it says these words. Go ahead. Do you see anywhere in that language where it says we must only use the union and we have to use you first? No, they don't have to call us at all. In fact, they had a house crew. They had a house crew, Your Honor, that did this work most of the time. They only called us in for big shows. How is it exclusive if they regularly use their own people first, and then if they decide to call us, then they can supplement that with their own crew or with others outside completely. How in the world is that exclusive? And then look at the practice, Your Honor. Go beyond that contract language and look at the practice. They admitted runners are covered under that contract with SMG. Tom Lorenz testified about that. Oh, but we regularly hire runners off the street, including Sheila Bronkhorst, who was one of the charging parties in that case. They hired her off the street after we took her off our referral list. Brian Waite comes in and talks about how he comes in with his company, McCray Lighting, to do the rib fest. Yeah, but let me ask you this question. Didn't the production manager for SMGs testify that the union is the sole labor provider for the three facilities? This is kind of a substantial evidence review, right? It is. You know who I'm referring to? Boy, isn't the testimony of the production manager in that substantial evidence? You understand you can have like 60 percent. I'm making this up. You can have 60 percent of the evidence, and 40 percent may be enough for substantial evidence. I'd say 90 percent of the evidence, Your Honor, showed we were not an exclusive service provider. Then he goes on to say, well, maybe I don't really know who's out there because I didn't really know Sheila was there working for us. I was out of town. I guess I'm not on the ground. I'm not really seeing it. Did you see that later when he testifies about that? So she discredits our testimony about Brian Waite, says he didn't give enough details, but doesn't discredit this testimony where he admits, oh, well, maybe I didn't really know what was going on. Is that fair? Absolutely not. We put in lots and lots and lots of evidence that we were not an exclusive service provider, and you have bold, underlined, all capital language that says non-exclusive service provider, and that's just discounted and ignored. How is that not relevant and not controlling? Well, counsel, didn't it come down to a matter of credibility to believe who the ALJ and the board was going to have to make a credibility determination? And did you see that any time we put on evidence, it was determined to be not credible? Basically, anything that we said was just not credible, and anything the board put on was determined to be credible. I would ask you to review that with a non-biased eye. When you're not the agency judge, not the board for the very agency that's charging us, look at that from a non-biased perspective and re-examine those credibility determinations at their face, and not just, well, that's evidence that the union's putting on, so it's not credible. We've got plenty of times when that evidence was corroborated, and they just dismissed it. The one time they said, well, Sheila Bronkhorst's testimony was corroborated by what we call Junior. There's Tony Polonka, Jr. Well, they were living together. They were boyfriend-girlfriend. Of course their evidence is going to be similar. But you've got Brian Waite saying, no, they were really over here at Freeman Decorating, and they were cussing and they were causing all kinds of trouble at Freeman Decorating. And the judge wouldn't even let us get in the evidence concerning exactly the swear words that were put on. She kept limiting that and just said, well, that's corroborated. But any time we did, it was completely ignored. So I submit that there is a lot of bias going on when they reject the credibility of all of our witnesses pretty much outright. But Freeman Decorating there's no question about, because there the contract says, the employer agrees that all the work described here performed only by qualified workers from the union. You know, that contract really does show exclusivity. I'm not arguing the contract language. They do have workers that come and work beside ours that are not union employees. I don't know under the law that's enough to show they're non-exclusive, frankly. Freeman Decorating, you've got a few calls a year, you've got a few people out there. That's not the main thrust of our argument. It's not that big of a deal, Your Honor. It just isn't. The non-exclusivity, though, as to SMG, that is a big deal. And that is something I would ask you not to enforce this decision regarding. On other issues, there is a statute of limitations question that I want to bring up. And it was kind of odd, because in the brief, the NLRB says, well, we abandoned that by not citing case law. Well, it was the statute that was really at issue. It's that Section 160B. So what happens is the NLRB amends our charges on October 29, 2013, to raise an issue about our referral list, the way the referral list is ordered or structured. And that's the first time that ever comes up that wasn't in the original charge. Well, about seven months before that, we quit maintaining a referral list at all, except with respect to Freeman Decorating. So that decision probably should be enforced with respect to Freeman Decorating, because we still were maintaining a referral list with them. But with SMG, no referrals were still being done to SMG at that time through the union. They were being referred out through a company called Complete Payroll. So we just weren't doing it anymore. So it's more than six months. It's barred by the statute of limitations. The board says this was just a complicated way to keep control of the referral process. You know what they say. I know what they say. But if you look at those contracts, it's been handed over. The practices were just not doing it anymore. They hired our business agent to do it, which is only logical. You've got a guy that's been doing it forever. Why not hire him? That doesn't show that we're still maintaining control. He's being paid by Complete Payroll by a different entity. We don't have the ability to say, Complete Payroll, send this guy out or don't send that guy out. In fact, our guys weren't very happy about that decision, some of them, but that's the way we did it. Counsel, you listed eight issues on appeal. Under which one of those is the statute of limitations addressed? I guess I'm not sure what you're looking at for the numbers. It is in the brief. I don't know. Are you looking at assignment of errors? I'm looking at your listing of issues from your brief. Can you? Statement of issues presented for review. Page eight of your brief. Page what? I'm sorry, which page did you say? Page eight. Page eight, okay. You list eight issues. Is it seven, counsel, on page 10? Yeah, that's it right there. Thank you. Yes, and that's the same statute I'm citing, 29 U.S.C. 160B. It's in the assignment of errors. I didn't take a lot of time on it because it's simple. There's the statute. There's the time frame. The testimony's clear. But really, that referral list issue should be time barred, and that should be a pretty easy one there. But it also, you know, the referral list issue shouldn't be a problem if they're not exclusive either, and if there's no jurisdiction because you're looking at SMG as a whole. And I don't know if we touched on that enough. So what they're saying is that they have jurisdiction over SMG because they're looking at all the business that SMG does as a whole. Now, I understand under the case law, normally that would be fine to go look at everything that that employer did. Were they bringing in $50,000 worth of business to that area? But what's different here, what makes that egregious error, is that they're defining it for me as SMG purging. I'm not allowed to put in any evidence at all that goes beyond SMG purging, and they're saying that's the employer. Well, they can't have it both ways. They can't say SMG purging is the employer, and I'm not allowed to talk about anything else, and then say, oh, but we're going to talk about SMG as a whole and their practice of bringing in, you know, materials from everywhere. And then the judge erred in her analysis of that anyway to say that SMG brought that $50,000 worth of goods and services into purging because that wasn't Mr. Lorenz's testimony. It just wasn't. Isn't the $50,000 threshold not necessarily jurisdictional and sort of discretional by the board? Yes, but can they really say this is our rule, and as a matter of discretion, we're not going to hear these cases and have it in their manual that says we're going to dismiss these cases if that threshold's not met, and then decide, well, in this particular case, we're going to disregard that rule. We don't care. If they're going to make the rules, they need to follow the rules. It might be discretionary, but I don't see any other cases where they're saying, oh, we've disregarded that. It's been the rule for years and years and years. They don't, and that's the problem. I feel like the NLRB makes the rules and then changes the midstream and expects you to keep up with what they're doing and always be one step ahead of them, and by the way, it's not going to be a level playing field, and when you bring a testimony, we're going to automatically discredit it. It's not the way our law is supposed to work. It's not the fairness we're supposed to be getting when we go, and I realize agency decisions are always a little unlevel, but hey, if they're going to put rules into place, they've got to follow them. That's just the way it should be. There are some issues here that we're not raising. There are some things you're going to want to enforce. With regard to the V-Fund, we've paid it. We don't really care. Go ahead and enforce that. It's not worth fighting about. It's a few dollars to a few people, you know. With regard to our rules, the working rules, that's okay to go ahead and enforce that. We said we'll change the rules. We never applied them and never used them against anyone anyway. They were in a document that we can change. That's fine. They have a cross appeal on the issue with respect to the Constitution and bylaws. This is the one issue that we actually did win on. Both the ALJ and the board said your Constitution and bylaws are fine the way they're written. They said the Constitution and bylaws required, both in a pledge and another provision, that the union members had to exhaust internal remedies before they went outside to another tribunal. There was no mention there of LMDRA section 101A4, which says that's limited to four months. But there's no law that says that has to be in our Constitution and bylaws. It just means we can't discipline them or challenge a case that's filed more than four months after they begin the procedure, which we didn't, we haven't, and we wouldn't. And so under the clear law as it is, that was constitutional, that was legal, that was fine. And that's one of the provisions that we used when we decided to take them off the referral list. I have two minutes left. I'll reserve those. Thanks. All right. Thank you, Ms. Carlson. Mr. Laro. Thank you, Your Honors. May it please the court, I am Greg Laro for the National Labor Relations Board, asking the court to enforce the board's findings because they are supported by substantial evidence, reasonable credibility determinations, and are consistent with settled law. And a couple quick points on that. I know Your Honors are very familiar with the standard of review. But under the substantial evidence standard, it's not enough for my opponent to show that the evidence could go either way or perhaps another viewer could reasonably view it differently. They have to show the board's decision was unreasonable and unsupported by substantial evidence, even more so with credibility determinations. This court's standard shocks the conscience. So as Your Honors noted, a lot of these findings, whether it was exclusivity or whether the reasons for this or that action, like the suspensions past muster, came down to whom the judge believed. And my opponent has to face an uphill battle of showing that the board's choice shocks the conscience. And I would submit generally they don't quite meet that burden, although I appreciate that they're coming up with arguments. One thing I do appreciate is I think my opponent noted she's not really pushing the issue of the exclusivity of the hall at Freeman. I will take her at her word and answer any questions Your Honors might have about that hall. She does still dispute the finding of exclusivity of the hall at SMG Pershing. I think that finding is well supported, substantial evidence, reasonable credibility determinations, on both the language of the letter of understanding and the credited testimony of SMG's local manager and general manager who said we followed the terms of that agreement. We don't hire off the street. We go to the union for our labor. And I appreciate there was other testimony, such as by Mr. White, but nothing in that testimony compels the board to view the evidence the union's way or shocks the conscience and the board believing those two officials over Mr. White. And I just want to say it was more than a lack of detail. It was that that gentleman couldn't specify when some of these instances occurred. As the judge noted, it could be that these were at times when SMG wasn't even the company involved or what percentage of non-union labor he saw there. At that point, it doesn't shock the conscience for the judge to say, well, I put more stock in those two officials who testified that they did have an exclusive arrangement in practice. And I'm happy to answer any questions your honors have about the disputed violations, the suspensions, the refusal to refer. But at the end of the day, it comes down to substantial evidence and credibility again. Just to give one example, the union official who made the decision was asked, why didn't you refer those two employees to that one job? And he said, they were the most senior available for those two positions. I would have referred them, but for that incident at complete. So what happened at complete? That's the union's payroll provider, at least that was the initial arrangement. And the two employees in question went there because they had a question about the W-4s in their paperwork. Their credited testimony shows this was a peaceful, non-intrusive meeting. And yet, the union's making the argument, that's the reason we didn't refer them.  And we see that meeting as showing, and these are their actual terms and their testimony, that we had reason to worry about whether these employees were stable, whether other workers would be safe working with them. I don't think it's hard to see that it didn't shock the conscience to discredit that claim based on this evidence. There was also discussion this morning of the section 10B of the act, 160B, and whether certain claims were time limited. You can see the board's position from our brief. We submit that that claim wasn't even meaningfully argued in their brief. It's not enough to just cite the statute. Counsel, it's enough to cite the statute if it controls. Huh? They cite the statute. Yeah, right, and if it controls, that's enough. That's authority. They cite authority, but I'm talking about this court's standard of meaningfully arguing. And this is- They have 11 lines. They have 11 lines of argument. And if the statute applies, I think one line could win. Maybe if you quoted the statute right, a phrase might win. If I may, Your Honor, this is my concern, and it's twofold. For one is I find it interesting that as short as their opening brief is on this point, their arguments in the reply brief are a lot longer. For the first time, they're explaining what support do we have for this operative claim? Because it's one thing just to cite the statute. We know what it says. It has that six-month period. But their claim is we stopped referring before that six-month started. Where is the support for that? In their opening brief, which I think is what matters for waiver purposes, they cite one page of the transcript. I believe it was JA 135. Frankly, Your Honor, I look at that, and I don't see any clear discussion of the issue, let alone something that would compel the board to agree with them, which is important because, again, this is an affirmative defense. Well, the ALJ understood the issue. The ALJ understood the issue? Yeah, ma'am. The ALJ understood the statute of limitations issue. But if I may, Your Honor, I'm arguing first the procedural issue. Did they do enough to preserve it in their brief? And I submit they didn't. They argued more in their reply brief. But that kind of shows what's going on here. They're making some of their arguments and showing their support for the first time in the reply brief. But as we know, to go to your point, the judge understood the argument because it was made to the judge. I don't think it was properly made to the court in the opening brief. And he said, you know, I've looked at all this evidence, and it looks like you did continue to refer at all reasonable times. The contracts in question refer to this being IOTSE labor and Mr. Gillaspie dealing with labor provided by the union through, I think, the phrases their organization. At a minimum, that could be reasonably viewed as continuing the referral practice. And again, it is my opponent's burden to make this affirmative defense. I don't think they meaningfully argued it. And I certainly don't think they proved it. So unless the court has further questions. Yes. Yes. Now, this is the first I've ever heard of this 1958 doctrine, the Siemens Doctrine, and your alleged restriction on yourself. You speak for the board, right? I am the board's attorney in this case. Yeah, yeah, you speak for the board. This $50,000 has never been changed, right, since 1958, the $50,000 amount? Not that I know of. Yeah, not that I can find either. And in this case, you've got one question about it. As I understand, one bit of testimony from the general manager of SMG about where the company had purchased stuff from outside the state. Now, I'm not excited about getting into this at all, but it looks like you don't have enough here to begin to argue to meet your own standard. Well, Your Honor, as you noted this morning, this is about choosing which witness to believe. And here we have, first, I should briefly note, statutory jurisdiction isn't disputed here. But as to this discretionary standard, no one's disputing that under settled law, you look at SMG, the corporation, and that the corporation is international and manages 200 venues worldwide. So it's not surprising they meet the $50,000 standard. And why do we think they meet it? Well, the local manager for SMG Pershing testified, yes, we've received over $50,000 worth of goods and services from out of state. Frankly, that's a solid basis, substantial evidence, for the board to find that its discretionary standard is met. And frankly, this argument that the board was compelled to look just at SMG Pershing, which, by the way, is a location of SMG, isn't supported by settled law. And my opponent cites no case compelling the board to depart from the multi-decades practice, you noted, of looking at the employer's totality of operations to say, let's just look at this one location. Well, she argues that she was restricted only to putting on evidence about SMG Pershing. As to the violation in the exclusivity of the hall, your honor, which is perfectly fine. Is there really a discrepancy there or not? There is no discrepancy whatsoever on dealing with those two issues. As to jurisdiction and the discretionary threshold, the board did what settled law says. Look at the totality of the employer's operations, and this, again, this entity manages 200 venues. You look at the totality of the operations. But as to the violations here, it was alleged to be a violation at this location. So the issue was, as to that location, do you have an exclusive arrangement? As your honors noted, and I'm not asking you to tip your hand, there's certainly some evidence there in the agreement and the practice that, yes, at SMG Pershing, we have an exclusive operation. Did the board make a specific finding on this $50,000 issue? The board found that the $50,000 threshold was met. Does the board still enforce this $50,000? The board applied that discretionary standard. It still believes the old Siemens case is good law, right? Yes. Or whatever you call it administratively. The Siemens case is still good law, as is its settled practice of looking at the totality of the employer's operations. And as your honor knows, statutory jurisdiction is very broad for the board here and isn't challenged, but the board has this discretionary standard because it's a bright-line rule and to help more efficiently manage its docket. And it's not in that rule itself, that $50,000 standard and how old it is, isn't really challenged by my opponent here. They're just upset that they weren't able to show non-exclusive relationships at other locations, but frankly that just wasn't relevant to the finding of exclusivity at SMG Pershing. The counsel for whoever was arguing for the board or whoever, the general counsel at the hearing, should have asked about all the employer's plants and operations and the $50,000 because the one question is pretty weak. What one question is pretty weak? The one question. In your position as general manager for SMG, are you familiar with whether or not the company has purchased greater than $50,000 from somebody outside Nebraska? That could have been a whole deal in Missouri where they bought it only in Missouri. See the problem with the question? As you know, it's in flows, out flows, direct, indirect. You know what the rule is. I know what the rule is. I don't see that testimony as weak. I see it as pretty crisp and conclusive. Well, you have to interpret it, right? You have to interpret it as being meeting the Siemens rule. Right. Okay. But I think the board's interpretation of that is reasonable, and so the question is for the court, what is my opponent's site to compel the opposite conclusion because this is a discretionary issue and a substantial evidence issue, and this court said the board's determination gets great weight. The court's going to intervene in extraordinary circumstances. I just don't see that here. It would be different if we had such crisp, clear evidence proving you didn't have activities meeting that threshold, but I submit, Your Honor, that you don't. Who has the burden on this? Because you've made it into a burden issue by the way you answered that. I made it. It's a burden issue if you're trying to bring it to the board. No, but who has the burden? Does the union have the burden or does the board have the burden? The board is determining whether its threshold is met, and I will say the board can have the burden on that. And it met it. My point is I was showing the appellate burden. Once you see, okay, you might not think, Your Honor, that this is the clearest testimony in the world, but could the board reasonably rely on it? I think the fair answer is yes. Then we get into the appellate burden. What does my opponent show to compel the opposite result, that this finding is an abusive discretion and no reasonable person could find on these facts that credited testimony that the threshold was met? I meant to speak to the appellate burden. The board has access to all kinds of government records. Could the board take administrative notice of the $50,000? Does the board even consider doing that? I would imagine it could, but I don't know. They didn't in this case. My understanding is they relied on the credited testimony. On the sentence. Yes, the admission that, yes, we meet the $50,000 threshold. I think at the end of the day, it's fair to debate. I think that's why the standard of review is what it is. If it's debatable, it can go either way. The agency should be affirmed because that's the standard of review. I think in some cases, I think the evidence favoring the board is stronger than anything against it. It comes down to credibility determinations, which I think were fair and certainly don't shock the conscious. At the end of the day, I ask the court to affirm the board's findings and enforce its order. Thank you very much for your time, Your Honor. Thank you, Mr. Lauro. Ms. Carlson, your rebuttal. There is language about, you know, in the case law about the standard of review being what shocks the conscience, but that's not necessarily consistently throughout the case law. As you see on page 7 of my brief, where I cite the standard of review, in this court, the Eighth Circuit's case, Midwest Precision Heating and Cooling, and it says, okay, you don't review at de novo, but you're not bound by the NLRB's conclusions when the NLRB's conclusions go beyond what good sense permits. It's my position here that this goes beyond what good sense permits. There's a little more to that standard of review than just shocks the conscience, and I'd ask you to take a look at that whole section and not rely on just a little bit of language plucked from a case here and there. We're talking about the credibility that Waite couldn't specify when the union had worked at those shows. Actually, if you look through his testimony, he said, well, last year. He's saying last year. He's also saying that's the way it's always been, that even before the union started doing this, I worked at Ribfest, and consistently all these years, that's the way the practice has been. It's always been. It was last year. It was 20 years ago. It's always been that I've been able to come in and do this, not doing it through IATSE. The reply brief being longer business about how, well, I must have recognized there was a problem. No, it wasn't that I didn't think the initial brief was enough. It's just that if someone points it out that they want more, I'm going to give more in the reply brief and expand on that. If someone says, well, that's too short, okay, well, we'll give you more. Maybe it would help, but I never conceded somehow that it wasn't sufficient to cite 160B by providing more information in the reply brief. That was perfectly sufficient. And, yes, I am saying in this case there's been an abuse of discretion with regard to the $50,000. I am saying that standard has been met here because it's not so much that they didn't follow precedent. Oh, can I continue this thought? I'm out of time. It's the way they defined the employer as SMG Pershing as the employer, and that goes beyond what's done in the past. That is into a whole other level, and that's what's the abuse of discretion. We're defining this employer. Now let me talk about anybody else, anything else, and then we're going outside. That's what makes us different. So based on that, I would ask you not to enforce the board's decision on these points that I've raised. Thank you very much for your time. Thank you, Ms. Carlson. Thank you also, Mr. Deloro. The court will take your case under advisement, consider it submitted, and will render decision in due course.